UNITED STATES DISTRICT COURT
FILED
MAY 06 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

In The United States District Court
For The Western District of New York

Eric Perez # 08B1176
    plaintiff

Julie Wolcott,
 Orleans Superintendent
    Respondent.

Writ of HABEAS CORPUS
28 USCA 2241
20 CV 6294 CJS

Civil Act. NO_____

PLEASE TAKE NOTICE,

    I, ERIC PEREZ is, the plaintiff
who is bringing forth this writ of Habeas Corpus
under 28 USCA 2241 (c)(3) due to my current prison
conditions and confinement. It itself is counter
constitutional and creates sudden imminent peril
to my safety due to the respiratory disease called
Coronavirus Disease 2019 (COVID-19) To inform
you, I am an American suffering from a severe
respiratory disease, Asthma. In 2017 I was
examined at Erie County Medical Center for
a Lung health assessment where the results
show my lungs to be in poor health, as well as
functioning 20 years older than the age I am. In
October of 2018 I transmitted a severe case

1 of 14

of Pneumonia where I suffered from complications from having a 104 degree fever to having my left lung filled 90 percent with fluid. Due to my vulnerability of contracting COVID-19 where I would be at a very high risk of suffering from the most severe symptoms, including death due to my respiratory illness, remaining in prison during this pandemic would indeed suffer me particulary grave danger. Therefore, I the plaintiff submit and file this "emergency motion for release" from custody due to the national emergency and worldwide pandemic caused by Coronavirus disease 2019 and "DECLARES" immediate release from custody reducing sentence to time served, and have my supervised post release term of 5 years be commenced immediately due to the national emergency and world wide pandemic caused by the respiratory disease, COVID 19.

## COVID 19 Factual Background

1. I, Eric Perez # 088176 who is the plaintiff brings to the court the following :

2. COVID-19 has caused a global pandemic and public health emergency. According to the World

Health Organization on April 10, 2020 "there were over 1.5m confirmed cases of COVID-19 worldwide with well over 90,000 confirmed deaths. Spanning across 213 countries and territories have been impacted".

3. People with respiratory illnesses are the most vulnerable to COVID-19.

4. According to recent results, the Western N.Y. areas such as ERIE, ORLEANS, and MONROE county has confirmed cases as such:
   (a) ERIE    : over 2000
   (b) ORLEANS : over 70
   (c) MONROE  : over 1000

5. As of April 11, 2020, a total of 32 correctional officers at five state prisons in the "GLOW" region are under quarantine due to potential COVID-1 exposure while four have exactly tested positive for the virus. One officer from ORLEANS C.F. is hospitalized and on a ventalator. That's according to Mark Deburgomaster, Western Vice President of the New York State Correctional Officer benevolent association, the union that represents correctional officers in the state.

3 of 14

6. Orleans Correctional Facility had 14 out of work, under quarantine, the most in the "GLOW" region. According to DOCCS, 467 of the agencies have about 29,000 employees with confirmed cases of COVID-19.

7. One civilian DOCCS employee has died from the illness as well as four parolee's. There are also two inmates who are suspected to have died of COVID-19 according to a DOCCS spokesperson as well as Delargomaster stating "its an up hill battle to get the State of board with implementing social distancing and elevated hygine measure within prison walls.

8. It has also been reported the U.S. tallies include at 400,000 plus, confirmed cases of COVID-19. Over all, New York State has 200,000 plus reported cases of COVID-19. Over 20k have died from the COVID-19 virus country wide.

9. I, the plaintiff declares the intergation of these components present unique challenges for control of COVID-19 transmission amongst one in prison.

10. March 7-13, 2020 State and Federal top executive "Declared" a state of Emergency for all New York State related COVID-19 cases [Exibit A, President Trump], and [Exibit B Andrew Cuomo, NYS Governor] with Fines in N.Y.S. upward to $1,000 imposed for violation of STATE and FEDERAL distancing mandates.

11. On the 17TH of April, 2020 N.Y.S. Governor implemented another executive order mandating that all citizens of the state of N.Y. to wear face masks while in public to prevent the spread of COVID-19.

Plantiff Factual Confinement

12. I, the plaintiff is housed in a medium security facility (barrack-like dormitory sleeping quarters) sleeping less than 5 feet from each neighbor in a dormitory with double bunked prisioners. Living in the dormitories, it is impossible to practice social distancing because of the following:

(a) In my housing unit 55 prisioners share showers, toilets and sinks which are within inches of eachother. The common area where the T.V.'s, toasters, hot pot, and microwave are all placed in the common area making social distancing impossible to be safe from the risk of contact.

(b) The prisioners and I are made to dine

within 7 feet of eachother with food prepaired by fellow American prisioners who are amongst staff who do not wear thier mask as lawfully depicted by the State of NY Governor.

(c) The prisioners and I were not issued effective face masks however was told we could only wear state issued handkerchief as a facemask which is ineffective because the handkerchief is too small to wrap around the face of a prisioner, but was informed to make it work which I am unable to because there has been no type of training that has shown me how to extend a handkerchief making it suitable to be worn as a face guard to protect me from the COVID-19 while housed around others and when I leave the dormitory.

(d) Staff members commute to work everyday from thier homes in cities and its near by suburbs with cases of COVID-19 ranging from 70-2000 plus cases

(e) Staff members are only wearing thier mask in the prensence of supervisors completely disreguarding the Governor of N.Y.S. executive order putting I, the plantiff and other prisoners at risk.

(f) It has been reported a couple of staff members were placed on ventilators because they had come in contact with the virus. When asked about these officers and circumstances the general

6 of 14

population was completely ignored.

(g) Roughly 20 prisioners were placed in quarantine for precaution however, staff members leave and return to work without being screened. They are only advised if they "feel ill don't come to work". As it been reported, a person could contract the virus and show no symptoms.

13. DOCCS Dept. of Corrections have encountered hundreds of staff members who are infected in American prisons. Orleans Corr. Fac. staff members are not being screened while entering the workplace. This threat of irreparable harm, a crowded dorm setting, and a crowded prison that has no ability to quarantine the large number of prisoners exposed to other prisoners who would eventually contract the virus (COVID-19) from a staff member. As it has been reported by, Mark Deburgomaster one officer from Orleans Correctional Facility was hospitalized and placed on a ventalator, as it was described in an article.

14. National, State and political subdivision leaders who have ordered social distancing as the only way to slow the spread of COVID-19 to flatten the curve and substantively avoid COVID-19. The inability to practice social distancing in medium security prisons make transpartations of COVID-19 more

likely putting I the plaintiff and other prisoners at risk of contracting the virus.

15. I the plaintiff have served 13 out of 17 years for being convicted of manslaughter the 1st degree and is expecting to be released on my conditional release date which is in December 2021. Therefore, I the plaintiff file this "emergency motion for release" from DOCCS custody and request plaintiff prison sentence be reduced to time served and his supervised released term of five years to be commenced immediately.

## Memorandum of Law

16. I the plaintiff Eric Perez # 08B1176 is an American over the age of 18 years of age, a minority and competent to duly assert his U.S. constitutional guarantees exactly access to substantive due process and Freedom from cruel and unusual punishment 5TH, 8TH, and 14TH amendments.

17. I the plaintiff is in New York State custody because I was convicted and sentenced to serve 17 years in the department of corrections for manslaughter in the 1st degree with 20 months untill my earliest release date I declare I owed

8 of 14

Fiduciary debt by ones operating under competent oath of office to uphold the U.S. constitution and prison walls in fact do not form a barrier seperating him from his constitutional guarantees. "WOLFF V. MC DONNELL, 94 s. ct 2963, 2973 (There is no iron curtain drawn between the Constitution and prisons in this country)

18. I the plaintiff declares since this COVID-19 pandemic his current prison condition have become counter-constitutional and contrary to State and National pre-requisitres in "declaring" exigency circumstances he prays to this court under emergency doctrine to deliver me from these deleterious conditions.

19. I the plaintiff at this time duly invokes the Emergency doctrine seeking rescue and further invokes 28 USCA 2241 (c)(3) which provides "The writ of Habeas Corpus shall not extend to a prisoner unless... [he] is in custody in violation of the constitution of laws or treasties of the United States.

20. I, the plaintiff declares the second circuit has (long interpreted (section) 2241 applying to challenges to... prison condition) Thompon V. Choinski, 525 F. 3d 205, 209 [2nd cir] "Therefore, need for FEDERAL DUE PROCESS" and the competent Jurisdiction clary

exists to rescue the plaintiff from sudden instant peril which at this time equals cruel and unusual punishment.

21. I the plaintiff is currently house in a medium security prison where social distancing **is** wholly unavailable is more likely to contract COVID-19 to the point where perfunctory continued confinement weighted against the fact that my release date is under two years violates my guaranteed access to Basank V. Decker, No 20-CV-2518 (A+) 2020 WL 1481503 at 5 (SDNY) (The risk of contracting COVID-19 in tightly confined spaces, especially jails and prisons is now exceedingly obvious)

22. I the plaintiff declares this because now I am facing undoughted grave risk of contracting a clearly a clearly life threatening and life taking disease with myself being amongst the most vulnrable due to my comprimised respiratory system. This risky continued confinement plays no particular purpose. I completed my mandatory programs and I am now just waiting for my date to be released to come around which would be in December 2021. Continuein my confinement in prison for the next 20 months amongst a large, closed in population that social distancing is impossible constantly puts me on the

Verge of an highly transmittable disease and declares with vigor that he is now facing irreparable harm.

23. I the plaintiff declares substantive due process violations and its best understood as an amalgam of these two theories

a) unconstitutional conditions of confinement;

and b) deliberate indifference to serious medical needs.

Both theories derive from the same substantification: When the state takes a person into custody and holds them there against his will, the constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being... the rational for this principle is simple enough when the STATE by affirmative exercise of its power restrains an individual liberty that it renders him unable to care for himself and at the same time fails to provide for him his basic human needs - Food, clothing, shelter, medical care, and reasonable safety it transgresses the substantive limits on a state action set by the 8TH Amendment Hellings V. McKinney, 509 US 25, 32

24. I the plaintiff declares that DOCCS officals are aware of COVID-19's pandemic and there attempts reguardless of what faith they are in have no effective way to protect me the plaintiff from potentially

fatal epidemics. Again, prison officials are obligated to take "Reasonable care".

25. I the plaintiff declares with vigor that "Reason care" and "mitigation" obligations are not satisfied by merely tossing a bucket of water on a 4 alarmed blaze house fire or by placing handkerchief on a broken leg.

26. U.S. President Donald Trump and N.Y.S. Governor Andrew Cuomo particularly stated unequincal under the force of executive law that "when in public, individuals must practice social distancing of at least six feet from others" this to avoid contracting COVID-19. While I am eating communaly within 2 feet in a communal setting as well as sleeping and living in open air barrack-style dorms completely in violation of safe social distancing mandated requisites sleeping less than six feet from one another and forced to use the same sinks, toilets, and showers with 53 other prisoners. Leave me, the plaintiff at the whim of COVID-19 because social distancing is exactly impossible under these conditions. The close quartering, unable to maintain a six foot distance from others, the sharing, and touching objects used by one another, infectious disease is likely to spread placing I, the plaintiff at actual risk.

12 of 14

27. Therefore, I the plaintiff declares my health is the business / obligation of the government to provide "effective" medical care for him. Brown V. ~~La~~ Plata, 563 US 493, 508-509, Farmer V. Brenman, 511 US 825 832-33, Estelle V. Gamble, 429 US 97 102

28. I, the plaintiff declares with already confirmed cases in DOCCS it is inevitable that COVID-19 has and or will reach his instant facility, placing him in grave danger standing alone because of his confinement. Helling V. M^cKinney, 509 US 25, 32 [a remedy for unsafe conditions need not await a tragic event]

## Relief Requested

29 I the plaintiff declare with vigor absent immediate relief because I face dire consequences of irreparable harm due to my unstable respiratory system.

30. I, the plaintiff submit and file this emergency motion for release from custody reducing sentence to time served and have his supervised released term of 5 years be commenced immediately due to the national emergency and worldwide pandemic caused by the Coronavirus 2019.

Sworn to before
me this 30 day of
April , 2020

notary public

Mr. Eric Perez #08B1176
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411- 9199

# EXHIBIT A

Pres. Proc. No. 999485 FR 153372020 WL 1272563(Pres.)

Proclamation 9994

Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak

March 13, 2020

**\*15337  By the President of the United States of America**

**A Proclamation**

In December 2019, a novel (new) coronavirus known as SARS-CoV-2 ("the virus") was first detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19 that has now spread globally. The Secretary of Health and Human Services (HHS) declared a public health emergency on January 31, 2020, under section 319 of the Public Health Service Act (42 U.S.C. 247d), in response to COVID-19. I have taken sweeping action to control the spread of the virus in the United States, including by suspending entry of foreign nationals seeking entry who had been physically present within the prior 14 days in certain jurisdictions where COVID-19 outbreaks have occurred, including the People's Republic of China, the Islamic Republic of Iran, and the Schengen Area of Europe. The Federal Government, along with State and local governments, has taken preventive and proactive measures to slow the spread of the virus and treat those affected, including by instituting Federal quarantines for individuals evacuated from foreign nations, issuing a declaration pursuant to section 319F-3 of the Public Health Service Act (42 U.S.C. 247d-6d), and releasing policies to accelerate the acquisition of personal protective equipment and streamline bringing new diagnostic capabilities to laboratories. On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States.

The spread of COVID-19 within our Nation's communities threatens to strain our Nation's healthcare systems. As of March 12, 2020, 1,645 people from 47 States have been infected with the virus that causes COVID-19. It is incumbent on hospitals and medical facilities throughout the country to assess their preparedness posture and be prepared to surge capacity and capability. Additional measures, however, are needed to successfully contain and combat the virus in the United States.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 201 and 301 of the National Emergencies Act (50 U.S.C. 1601 et seq.) and consistent with section 1135 of the Social Security Act (SSA), as amended (42 U.S.C. 1320b-5), do hereby find and proclaim that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020. Pursuant to this declaration, I direct as follows:

Section 1. Emergency Authority. The Secretary of HHS may exercise the authority under section 1135 of the SSA to temporarily waive or modify certain requirements of the Medicare, Medicaid, and State Children's Health Insurance programs and of the Health Insurance Portability and Accountability Act Privacy Rule throughout the duration of the public health emergency declared in response to the COVID-19 outbreak.  **\*15338**

Sec. 2. Certification and Notice. In exercising this authority, the Secretary of HHS shall provide certification and advance written notice to the Congress as required by section 1135(d) of the SSA (42 U.S.C. 1320b-5(d)).

Sec. 3. General Provisions. (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

# EXHIBIT B

Case 6:20-cv-06294-CJS   Document 1   Filed 05/06/20   Page 18 of 36

2020 Sess. Law News of N.Y. Exec. Order 202 (McKINNEY'S), 2020 Sess. Law News...

2020 Sess. Law News of N.Y. Exec. Order 202 (McKINNEY'S)

McKINNEY'S 2020 SESSION LAW NEWS OF NEW YORK

Executive Order No. 202

March 7, 2020

WHEREAS, on January 30, 2020, the World Health Organization designated the novel coronavirus, COVID-19, outbreak as a Public Health Emergency of International Concern;

WHEREAS, on January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19;

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and more are expected to continue; and

WHEREAS, New York State is addressing the threat that COVID-19 poses to the health and welfare of its residents and visitors.

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, hereby find, pursuant to Section 28 of Article 2-B of the Executive Law, that a disaster is impending in New York State, for which the affected local governments are unable to respond adequately, and I do hereby declare a State disaster emergency for the entire State of New York. This Executive Order shall be in effect until September 7, 2020; and

IN ADDITION, this declaration satisfies the requirements of 49 C.F.R. 390.23(a)(1)(A), which provides relief from Parts 390 through 399 of the Federal Motor Carrier Safety Regulations (FM CSR). Such relief from the FM CSR is necessary to ensure that crews are available as needed.

FURTHER, pursuant to Section 29 of Article 2-B of the Executive Law, I direct the implementation of the State Comprehensive Emergency Management Plan and authorize all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety.

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 6, 2020 the following:

FURTHER, pursuant to Section 29 of Article 2-B of the Executive Law, I direct the implementation of the State Comprehensive Emergency Management Plan and authorize all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety.

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 6, 2020 the following:

**Case 6:20-cv-06294-CJS   Document 1   Filed 05/06/20   Page 19 of 36**

2020 Sess. Law News of N.Y. Exec. Order 202 (McKINNEY'S), 2020 Sess. Law News...

Section 405 of Title 10 of the NYCRR, to the extent necessary to maintain the public health with respect to treatment or containment of individuals with or suspected to have COVID-19;

Subdivision d and u of section 800.3 of Title 10 of the NYCRR, to the extent necessary to permit emergency medical service personnel to provide community paramedicine, transportation to destinations other than hospitals or health care facilities, telemedicine to facilitate treatment of patients in place, and such other services as may be approved by the Commissioner of Health;telemental health services, including the requirements for in-person initial assessment prior to the delivery of telemental health services, limitations on who can deliver telemental health services, requirements for who must be present while telemental health services are delivered, and a recipient's right to refuse health services;

Paragraph 3 of subdivision f of section 505.14 of Title 18 of the NYCRR, to the extent necessary to permit nursing supervision visits for personal care services provided to individuals affected by the disaster emergency be made as soon as practicable;

Sections 8602 and 8603 of the Education Law, and section 58-1.5 of Title 10 of the NYCRR, to the extent necessary to permit individuals who meet the federal requirements for high complexity testing to perform testing for the detection of SARS-CoV-2 in specimens collected from individuals suspected of suffering from a COVID-19 infection;

Subdivision 4 of section 6909 of the Public Health Law, subdivision 6 of section 6527 of the Education Law, and section 64.7 of Title 8 of the NYCRR, to the extent necessary to permit physicians and certified nurse practitioners to issue a non-patient specific regimen to nurses or any such other persons authorized by law or by this executive order to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing, or to perform such other tasks as may be necessary to provide care for individuals diagnosed or suspected of suffering from a COVID-19 infection;

Section 596 of Title 14 of the NYCRR to the extent necessary to allow for rapid approval of the use of the telemental health services, including the requirements for in-person initial assessment prior to the delivery of telemental health services, limitations on who can deliver telemental health services, requirements for who must be present while telemental health services are delivered, and a recipient's right to refuse telemental health services;

Section 409-i of the Education Law, section 163-b of the State Finance Law with associated OGS guidance, and Executive Order No. 2 are suspended to the extent necessary to allow elementary and secondary schools to procure and use cleaning and maintenance products in schools; and sections 103 and 104-b of the General Municipal Law are suspended to the extent necessary to allow schools to do so without the usual advertising for bids and offers and compliance with existing procurement policies and procedures;

Article 7 of the Public Officers Law, section 41 of the General Construction Law, and section 3002 of the Public Health Law, to the extent necessary to permit the Public Health and Health Planning Council and the State Emergency Medical Services Council to meet and take such actions as authorized by law, as may be necessary to respond to the COVID-19 outbreak, without meeting quorum requirements or permitting the public in-person access to meetings, provided that any such meetings must be webcast and means for effective public comment must be made available; and

FURTHER, I hereby temporarily modify, for the period from the date of this Executive Order through April 6, 2020, the following laws:

Section 24 of the Executive Law; Sections 104 and 346 of the Highway Law, Sections 1602, 1630, 1640, 1650, and 1660 of the Vehicle and Traffic Law; Section 14(16) of the Transportation Law; Sections 6-602 and 17-1706 of the Village Law; Section 20(32) of the General City Law; Section 91 of Second Class Cities Law; Section 19-107(ii) of the New York City Administrative Code; and Section 107.1 of Title 21 of the New York Codes, Rules and Regulations, to the extent necessary to provide the Governor with the authority to regulate traffic and the movement of vehicles on roads, highways, and streets.

(L.S.) GIVEN under my hand and the Privy Seal of the State in the City of Albany this seventh day of March in the year two thousand twenty.

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK  )

                 §:

COUNTY OF ORLEANS  )

    I, _Eric Perez_____, being duly sworn, deposes and says:

    That I am the _Plaintiff___ in the within action, and I reside at Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, New York 14411-9199.

    That on the _29_ day of _April_____, 20_20_, I served _The U.S. District court a ~~writ~~ writ of Habeas Corpus 28 USCA 2241_____

_____

by placing it into a mailbox located at the above-named Facility, which is under the direct care and custody of Orleans Correctional Facility, addressed to the below named at the address(es) within the State of New York respectfully designated by them for the purpose as follows:

| | |
|---|---|
| TO: _U.S. District Court_ <br> _100 State St._ <br> _Rochester, NY  14614_ | TO:_____ |
| TO:_____ | TO:_____ |

_____, Pro Se

Orleans Correctional Facility
3531 Gaines Basin road
Albion, New York 14411-9199

Sworn to before me this

_30_ Day of _April___, 20_20_

_____
NOTARY PUBLIC

EDWARD GUERRERO
COMMISSION EXPIRES
Monroe County
NOTARY PUBLIC
01GU6345856
JULY 25. 2020
STATE OF NEW YORK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

Eric Perez                          Civ. Act NO _____

            Plaintiff              AFFIDAVIT IN LIEU OF
                                   EMERGENCY ORDER TO SHOW
                                   CAUSE FOR PRELIMINARY
                                   INJUNCTION AND
                                   TEMPORARY RESTRAINING
                                   ORDER

V.

Governor Andrew Cuomo
DOCCS Comissioner - Anthony Annucci
ORLEANS Superintendent - Julie Wolcott
(OFFICAL CAPACITY)                    Defendants

        AN AFFIDAVIT OF ERIC PEREZ

I, Eric Perez being duly sworn according to the
Law depose and says that I am the plaintiff in
the above entitled proceeding.
1.    Plaintiff, an American in prison with a
underlying respiratory disease brings forth an
Emergency Motion for Preliminary Injunction and a
temporary restraining order as a class action with

(1)

ones similary situated.

PRELIMINARY STATEMENT

COVID-19 Pandemic

COVID-19 has caused a global pandemic and public health emergency according to the World Health Organization, as of the afternoon of April 10, 2020 there were over 1.5 million confirmed cases of COVID-19 worldwide with wellover 90K confirmed deaths across 213 countries, areas, and territories impacted. According to reports as of April 10, 2020 the U.S. tallies include at least 400K plus confirmed cases of COVID-19 across every state, Washington D.C. and 4 U.S. territories with over 20K in some states including New York whom have died from the virus.

These components present unique challenges for control of COVID-19 transmissions amungst ones in Prison. On March 7-13 2020, State and Federal top exectutives DECLARED a State of Emergency for all New York State and Nation-wide related COVID-19 cases [Exibit A Donald Trump, U.S. President] and [Exibit B Andrew Cuomo, N.Y.S. Governor] with Fines in N.Y.S. upward to $1000 imposed for violation of State and Federal Social Distancing mandates.

PLAINTIFF FACTUAL CONFINEMENT

2

Eric Perez in a medium security prison, a barrack like dorm setting sleeping quarters. Communal sleeping less than five feet from one another, some still double bunked. Open air setting wholly unable to social distance, made to dine communally within 2 feet of each other with food prepared by other American Prisoners. Entertainment found in common areas within inches, sharing sinks, toilets, and showers. Much of space is so cramped that plaintiff and ones similarly situated are physically unable to social distance to be safe from the risk of contagion. Plaintiff is wholly unable to social distance to be safe f and with a respiratory disease being amongst the most vulnerable when it comes to the untreatable disease COVID-19 is more at risk to be facing a death sentence if the disease is contracted. Plaintiff has 20 months to earliest release date while a vacine for COVID-19 is unlikely to be available for 12-18 months. If contracted, plaintiff, who suffers from Asthma as well as lungs that were compared to a 50 year old lungs, where the plaintiff is 20 years younger than that, according to a respiratory/lung assessment that was conducted in 2017 at Erie County Medical Center, he can suffer irreparable harm or even death. While staff were ordered to wear face masks they are not wearing thier masks at all, and only wearing them in the presence of supervisors. DOCCS have encountered hundreds of staff who are affected and American Prisoners whom

3

have died. This threat of irreparable harm, a crowded dorm setting, and a crowded over all prison that has no ability to quarantine the large number of prisoners exposed to other prisoners who eventually show symptoms. While National, State, and Political Subdivison leaders whom have ordered social distancing as the only way to slow the spread of COVID-19, the inability to practice social distancing in Medium Security prisons makes transportation of the highly transmittable disease COVID-19 more likely. No one is being individually screened. All DOCCS programs are shut down leaving medium security prisoners constantly congregating 24 hours per day, and being all programs are in fact closed. Plaintiff having served most of his prison term, completion of mandatory programs, and suffering from a respirtory disease his current risky confinement is serving no legitimate purpose

## MEMORANDUM OF LAW

Plantiff Eric Perez, an American born citizen over the age of 18 years of age, a mincrity and competent to duly assert his US Constitutional guarantees exact access to SUBSTANIVE DUE PROCESS and freedom from cruel and unusual punishment.
Relator an American born currently in prison suffering from a respirtory disease during the COVID-19

4

pandemic with majority of prison term served
DECLARES he is owed a fiduciary debt by ones
operating under competent Oath of office to uphold
the US constitution and prison walls in fact do not
form a barrier seperating him from his Constitutional
guarantees. WOLFF v. McDonnell, 94 S. Ct 2963,
2973 (There is no iron curtain drawn between the
constitution and prisons in this country)
8. Relator declares with vigor that sence this COVID-19
pandemic his current prison conditions have become
counter-constitutional and contrary to state and
National pre-requisites in DECLAIRING exingent
State of Emergencies [Exibit A] and due to these
exingent circumstances he prays to this court under
Emergency Doctrine to deliver him from these deleterious
conditions

9. Relator at this time duly invokes the EMERGENCY
DOCTRINE seeking rescue and further invokes
28 USCA § 2241 (c)(3) which provides "The Writ
of Habeas Corpus shall not extend to a prisoner unless.
[he] is in custody in violation of the Constitution or
Laws or Treaties of the United States"

10. Relator declares the Second circuit has (long interpr
[Section] 2241 as applying to challenges to ... prison
conditions.) Thompson v. Choinski, 525 F.3d 205, 209

5.

[2nd Cir] THEREFORE need for FEDERAL DUE PROCESS and the competent Jurisdiction clearly exists to rescue the relator from sudden instant peril which at this time equals cruel and unusual punishment.

11. Relator currently housed in medium security prison where SOCIAL DISTANCING is wholly unavailable is more likely to contract COVID-19 to the point where perfunctory continued confinement weighed against the fact that his release date is next year while he is suffering from a respirtory illness during the COVID-19 pandemic which attacks the respiratory system violates his guarenteed access to SUBSTANIVE DUE PROCESS under Federal and State constitutions.
Basank V. Decker, NO. 20-CV-2518 (AT), 2020 WL 1481503 at 5 (SDNY)
(The risk of ~~contractiong~~ contracting COVID-19 in tightly confined spaces especially jails and prisons is now ~~exceedingly~~ obvious)

12. Relator declares this because he now facing undoughted grave risk of contracting alone because of his confinement. In this event DOCCS has closed all program leaving persons on the housing unit together unable to social distance 24-7 and with no programs or movement virtually everything is closed in DOCCS. The relator with less than 20 months, suffering from a respiratory

6

disease this risky continued confinement plays no particular purpose.

13. Relator at this time is on the verge of inevideble life taking disease and declares with vigor that he is now facing irreparable harm.

14. Relator declares SUBSTANTIVE DUE PROCESS violations and is best understood as an amalgam of these two theories.
    (a) Unconstitutional conditions of confinement; and
    (b) Deliberate Indifference to serious medical needs

Both theories derive from the same substantification: (When the state takes a person into custody and holds them there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general being... the rational for this principle is simple enough when the state by affirmative exercise of its power restrains an individual liberty that it renders him unable to care for himself and at the same time fails to provide for him his basic human needs - EQ, food, clothing, shelter, medical care, and reasonable safety it trangresies the substantve limits on a state action set by the 8TH Amendment) Hellings V. McKimey, 509 US 25, 32

7

15. Relator declares that it is undoughted that DOCCS officials are aware of COVID-19's Pandemic and thier attempts reguardless of what Faith they are in have no effective way to protect the relator from potentially fatal epidemics. Again Prison officals are obligated to take REASONABLE CARE

16 Relator declares with vigor that REASONABLE CARE and "Mitigation" obligations are not satisfied by merely tossing a bucket of water on a 2 Floor alarm blaze house fire or by placing a bandaid on a compound bone Facture.

17. Relator declares his health is the business of the goverment whom incarcerated him. Indeed it is axiomatic that the United State Constitution requires the goverment to provide EFFECTIVE Medical Care for him. Brown v. Plata, 563 US 493, 508-509, Farmer V. Brennan, 511 US 825 832-33 Estelle v. Gamble, 429 US 97, 102

18. U.S. President Donald Trump and New York State Governor Andrew Cuomo particulary stated unequincal under the force of Exectutive Law that "When in Public, individuals MUST practice social distancing of at least six-feet From others" this to avoid contracting COVID-19. While relator continues to eat communaly

8

within 7 feet in communal settings. Sleeping and living in open air Barrock-style dorms completely in violation of safe social distancing mandated requisites sleeping less than six feet from one another forced to use the same sinks toilets and showers with 60 people on housing unit, leaving relator wholly at the whim of COVID-19 because social distancing and shying away from communal areas and collective use is exactly impossible at this time. The close quartering, unable to maintain a six foot distance from others, sharing or touching objects used by others, infectious diseases that are transmitted via For these reasons the risk of spread is great makeing COVID-19 easier to contract.

19. Relator declares with already confirmed cases in DOCCS is inevitable that COVID-19 has reached his instant facility placing him in grave dangerstandln alone because of his confinement.
Helling V. McKinney, 509 US 25, 32 (A remedy for unsafe conditions need not await a tragic event)

20. Relator declares with vigor absent immediate relief. He faces dire consequences of irreparable harm, espically to his unstable lung conditions which include asthma which weighs against NO SHIELD against COVID-19 his unconstitutional confinement is not only highly violatile but also perfunctory.

9

## RELIEF REQUESTED

IMMEDIATE RELEASE AND TRANSFERRING TO NEW YORKS ALREADY EXISTING POST RELEASE SUPERVISION Also relator prays for a substance trumps form construction

Eric Perez  PROPRIA PERSONA
08-B-1176
Orleans Correctional Fac.
3531 Gaines Basin Rd.
Albion, N.Y. 14411-9199

Sworn to before
me this 30 day of
April, 2020



10

# EXHIBIT A

Pres. Proc. No. 999485 FR 153372020 WL 1272563(Pres.)
Proclamation 9994

Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak

March 13, 2020

**\*15337  By the President of the United States of America**

**A Proclamation**

In December 2019, a novel (new) coronavirus known as SARS-CoV-2 ("the virus") was first detected in Wuhan, Hubei Province, People's Republic of China, causing outbreaks of the coronavirus disease COVID-19 that has now spread globally. The Secretary of Health and Human Services (HHS) declared a public health emergency on January 31, 2020, under section 319 of the Public Health Service Act (42 U.S.C. 247d), in response to COVID-19. I have taken sweeping action to control the spread of the virus in the United States, including by suspending entry of foreign nationals seeking entry who had been physically present within the prior 14 days in certain jurisdictions where COVID-19 outbreaks have occurred, including the People's Republic of China, the Islamic Republic of Iran, and the Schengen Area of Europe. The Federal Government, along with State and local governments, has taken preventive and proactive measures to slow the spread of the virus and treat those affected, including by instituting Federal quarantines for individuals evacuated from foreign nations, issuing a declaration pursuant to section 319F-3 of the Public Health Service Act (42 U.S.C. 247d-6d), and releasing policies to accelerate the acquisition of personal protective equipment and streamline bringing new diagnostic capabilities to laboratories. On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States.

The spread of COVID-19 within our Nation's communities threatens to strain our Nation's healthcare systems. As of March 12, 2020, 1,645 people from 47 States have been infected with the virus that causes COVID-19. It is incumbent on hospitals and medical facilities throughout the country to assess their preparedness posture and be prepared to surge capacity and capability. Additional measures, however, are needed to successfully contain and combat the virus in the United States.

NOW, THEREFORE, I, DONALD J. TRUMP, President of the United States, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 201 and 301 of the National Emergencies Act (50 U.S.C. 1601 et seq.) and consistent with section 1135 of the Social Security Act (SSA), as amended (42 U.S.C. 1320b-5), do hereby find and proclaim that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020. Pursuant to this declaration, I direct as follows:

Section 1. Emergency Authority. The Secretary of HHS may exercise the authority under section 1135 of the SSA to temporarily waive or modify certain requirements of the Medicare, Medicaid, and State Children's Health Insurance programs and of the Health Insurance Portability and Accountability Act Privacy Rule throughout the duration of the public health emergency declared in response to the COVID-19 outbreak.  **\*15338**

Sec. 2. Certification and Notice. In exercising this authority, the Secretary of HHS shall provide certification and advance written notice to the Congress as required by section 1135(d) of the SSA (42 U.S.C. 1320b-5(d)).

Sec. 3. General Provisions. (a) Nothing in this proclamation shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

# EXHIBIT B

Case 6:20-cv-06294-CJS   Document 1   Filed 05/06/20   Page 34 of 36

2020 Sess. Law News of N.Y. Exec. Order 202 (McKINNEY'S), 2020 Sess. Law News...

2020 Sess. Law News of N.Y. Exec. Order 202 (McKINNEY'S)

McKINNEY'S 2020 SESSION LAW NEWS OF NEW YORK

Executive Order No. 202

March 7, 2020

WHEREAS, on January 30, 2020, the World Health Organization designated the novel coronavirus, COVID-19, outbreak as a Public Health Emergency of International Concern;

WHEREAS, on January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19;

WHEREAS, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and more are expected to continue; and

WHEREAS, New York State is addressing the threat that COVID-19 poses to the health and welfare of its residents and visitors.

NOW, THEREFORE, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, hereby find, pursuant to Section 28 of Article 2-B of the Executive Law, that a disaster is impending in New York State, for which the affected local governments are unable to respond adequately, and I do hereby declare a State disaster emergency for the entire State of New York. This Executive Order shall be in effect until September 7, 2020; and

IN ADDITION, this declaration satisfies the requirements of 49 C.F.R. 390.23(a)(1)(A), which provides relief from Parts 390 through 399 of the Federal Motor Carrier Safety Regulations (FM CSR). Such relief from the FM CSR is necessary to ensure that crews are available as needed.

FURTHER, pursuant to Section 29 of Article 2-B of the Executive Law, I direct the implementation of the State Comprehensive Emergency Management Plan and authorize all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety.

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 6, 2020 the following:

FURTHER, pursuant to Section 29 of Article 2-B of the Executive Law, I direct the implementation of the State Comprehensive Emergency Management Plan and authorize all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety.

IN ADDITION, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 6, 2020 the following:

Case 6:20-cv-06294-CJS   Document 1   Filed 05/06/20   Page 35 of 36

**2020 Sess. Law News of N.Y. Exec. Order 202 (McKINNEY'S), 2020 Sess. Law News...**

Section 405 of Title 10 of the NYCRR, to the extent necessary to maintain the public health with respect to treatment or containment of individuals with or suspected to have COVID-19;

Subdivision d and u of section 800.3 of Title 10 of the NYCRR, to the extent necessary to permit emergency medical service personnel to provide community paramedicine, transportation to destinations other than hospitals or health care facilities, telemedicine to facilitate treatment of patients in place, and such other services as may be approved by the Commissioner of Health;telemental health services, including the requirements for in-person initial assessment prior to the delivery of telemental health services, limitations on who can deliver telemental health services, requirements for who must be present while telemental health services are delivered, and a recipient's right to refuse health services;

Paragraph 3 of subdivision f of section 505.14 of Title 18 of the NYCRR, to the extent necessary to permit nursing supervision visits for personal care services provided to individuals affected by the disaster emergency be made as soon as practicable;

Sections 8602 and 8603 of the Education Law, and section 58-1.5 of Title 10 of the NYCRR, to the extent necessary to permit individuals who meet the federal requirements for high complexity testing to perform testing for the detection of SARS-CoV-2 in specimens collected from individuals suspected of suffering from a COVID-19 infection;

Subdivision 4 of section 6909 of the Public Health Law, subdivision 6 of section 6527 of the Education Law, and section 64.7 of Title 8 of the NYCRR, to the extent necessary to permit physicians and certified nurse practitioners to issue a non-patient specific regimen to nurses or any such other persons authorized by law or by this executive order to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing, or to perform such other tasks as may be necessary to provide care for individuals diagnosed or suspected of suffering from a COVID-19 infection;

Section 596 of Title 14 of the NYCRR to the extent necessary to allow for rapid approval of the use of the telemental health services, including the requirements for in-person initial assessment prior to the delivery of telemental health services, limitations on who can deliver telemental health services, requirements for who must be present while telemental health services are delivered, and a recipient's right to refuse telemental health services;

Section 409-i of the Education Law, section 163-b of the State Finance Law with associated OGS guidance, and Executive Order No. 2 are suspended to the extent necessary to allow elementary and secondary schools to procure and use cleaning and maintenance products in schools; and sections 103 and 104-b of the General Municipal Law are suspended to the extent necessary to allow schools to do so without the usual advertising for bids and offers and compliance with existing procurement policies and procedures;

Article 7 of the Public Officers Law, section 41 of the General Construction Law, and section 3002 of the Public Health Law, to the extent necessary to permit the Public Health and Health Planning Council and the State Emergency Medical Services Council to meet and take such actions as authorized by law, as may be necessary to respond to the COVID-19 outbreak, without meeting quorum requirements or permitting the public in-person access to meetings, provided that any such meetings must be webcast and means for effective public comment must be made available; and

FURTHER, I hereby temporarily modify, for the period from the date of this Executive Order through April 6, 2020, the following laws:

Section 24 of the Executive Law; Sections 104 and 346 of the Highway Law, Sections 1602, 1630, 1640, 1650, and 1660 of the Vehicle and Traffic Law; Section 14(16) of the Transportation Law; Sections 6-602 and 17-1706 of the Village Law; Section 20(32) of the General City Law; Section 91 of Second Class Cities Law; Section 19-107(ii) of the New York City Administrative Code; and Section 107.1 of Title 21 of the New York Codes, Rules and Regulations, to the extent necessary to provide the Governor with the authority to regulate traffic and the movement of vehicles on roads, highways, and streets.

(L.S.) GIVEN under my hand and the Privy Seal of the State in the City of Albany this seventh day of March in the year two thousand twenty.

NEOPOST
05/01/2020
US POSTAGE $002.20⁰
ZIP 14411
041A11280450

U.S. District Court
100 State Street
Rochester, N.Y. 14614

Eric Perez #08B1176
Orleans Correctional Fac.
Albion, N.Y. 14411 - 9199


Orleans Correctional Facility

LEGAL MAIL